The next case is number 2007-7255 Medrano v. Department of Veterans Affairs. Mr. Carpenter, whenever you're ready. I know you're familiar with the lights. May it please the Court, I'm Carpenter, appearing on behalf of Mr. Alfonso Medrano. Mr. Medrano appeals a legal determination made by the Veterans Court that although Congress had not specifically mandated that the Board of Veterans Appeals assess prejudicial error, the Veterans Court in a prior case in Mayfield v. Nicholson had found that the Board is not prohibited from considering the doctrine of harmless error in the VCAA notice or Veterans Claims Assistance Act of 2000 notice context. Mr. Medrano believes that the Court below impermissibly extended the statutory grant of jurisdiction to the Board of Veterans Appeals to include the assessment of prejudicial error after a finding of error has been made by the Board concerning a mistake made by the Board in this case in relationship to notice concerning his claim for compensation for depression. The Board's jurisdiction is defined by Congress at 38. I'm sorry, Counselor, I'm not understanding you. What is the legal error that you say you're appealing? Whether or not the Board can decide prejudicial error? Sure. But we already said in Mayfield that that wasn't a problem. And here, the Veterans Court did their own independent review. They made it clear they did it de novo. I don't understand how you're appealing this issue. Why are you appealing this issue? The Veterans Court did it independently. Even if the Board did it wrong, it's pointless because the Veterans Court did it independently. Because the Board allowed the VA a second bite of the apple. And in this case, the question is whether or not there is jurisdictional authority on the part of the Board to do that. But we already said in Mayfield it's not a problem. With respect, Your Honor, I don't read Mayfield to say that it's not a problem. It was raised in Mayfield. Well, what do you read Mayfield to say then? I don't read Mayfield to address the question of whether or not the Board does or does not have jurisdiction. What I understood the Court in Mayfield to be saying was is that it was permissible for the Veterans Court to have done that. That does not go to the question of whether or not the Board in the first instance has jurisdiction to decide the question of prejudicial error. In Mayfield, the Veterans Court had sent the case back to the Board for that determination. So there was an express direction in the Mayfield case, following remand from this Court, directing the Board to do that. So why in the world, if we direct the Board to do something, would they not have jurisdiction to actually do it as a finding on their own? This Court did not direct that. The Veterans Court directed the Board to make the prejudicial error determination. And I'm suggesting that that is a factually distinguishable circumstance than the circumstance in this case where the Board takes it on its own. In the record, I believe it's page 63, the Board took it on its own and cited the Court's scope of review statute in 7261 to consider the question of prejudicial error. There is no corresponding statute in Title 71 that authorizes the Board to undertake such a review. So are you saying that what should have happened is that when the Board found the notice problem, it should simply have sent it back to the VA at that point? Correct. That's correct. And that there is no authority under 7104A for the Board to undertake a further review as to whether or not that error was or was not prejudicial. Doug, go ahead. Well, there just simply is no authority authorizing the Board to take that next step, that the Board is asked to review and conduct one review of the VA's decision. They conducted that review, they found error, that should have been the end of the matter. And then what happens? It goes back to the VA? The VA would have been required to give notice to Mr. Medrano and an opportunity in response to that notice to submit evidence to substantiate that claim. Isn't this the problem point that he didn't have any other evidence? But the point of the 5103A notice is that they are to direct him as to what evidence is necessary to substantiate his claim. So the VA would have said to him that you need this type of evidence in order to prevail on your claim for depression. They never told him that, so he did not have an opportunity to respond to that notice. And that's the error that the Board found had occurred. And under 5103A, he was entitled to that. The Board found that the VA had not provided that information prior to their first final decision. Yes, Judge Jackson. Mr. Carpenter, what happens in the situation where the opportunity is provided and the attorney and the veteran say we have no further evidence to submit, there's no new evidence that we care to submit, the record is complete, we'd like you to consider the record as submitted? Well, the problem in this case is that we have two different claims. We have a claim for PTSD and a claim for depression. And the problem with relying upon a statement by the veteran or the Veterans Council or the veterans representative that they have nothing further to submit is the basic disconnect with the reason that the VA is charged by Congress to give that notice in the first instance. I can have no further evidence to submit if the VA hasn't told me or my client that you need this particular evidence to substantiate your claim. Based upon my reading of the record, based upon my assessment of the record, there was sufficient evidence. But obviously the reason for the notice is to give the VA an opportunity to say this is what you need to substantiate the claim. That didn't happen here and the case then moved forward. And by moving forward, the board found that there was an error by not having provided the notice in the first instance. But then it moved up to the Veterans Court. That's correct. And the Veterans Court reviewed it de novo. But they reviewed de novo a decision that should never have been made as a final decision. The decision under the board's jurisdiction should have been remanded. The remand decision is a non-final decision to go back and correct the error that is identified by the board. 7104A requires the board to review the Secretary's decision under one review. They found that a mistake was made. That should have been the end of the matter. Under 38 CFR 19.9, it indicates that when remand is required for the essential fairness necessary for the appellate process, that the matter has to be sent back. And that notice was required because the case should not have proceeded until that notice had been provided. So the rule of prejudicial error is obviously before the Supreme Court and Sanders and Simmons. Correct. Where, by your reasoning, does it get applied if the Veterans Court couldn't be reviewing it because the Board of Veterans Affairs would have had no jurisdiction to rule on it? Because the court's jurisdiction is predicated on the board's jurisdiction and the court's jurisdiction is subject to reviewing only a final decision of the board. They should not have issued a final decision. They should have issued a remand decision. A remand decision is not a final decision because it recognizes that there was error and says we will not make a final decision. Mr. Carpenter, I don't think that you got the gist of her question, so let me interrupt. I think she was saying, well, then, clearly Congress contemplated the Veterans Court to be able to consider prejudicial error. And I understood the gist of her question to focus, and I have the same question myself, focus on, well, under what circumstances then would it ever come before the court if the board couldn't do it? And I thought what you would say is the only time it would come before the court would be if the board erred, saying that they did not, if the board said we did not err, we gave adequate notice, and then the Veterans Court disagreed with them and said, no, you did err, but it was harmless. That's the only time the Veterans Court would ever consider harmless error in your view. They wouldn't actually ever review someone else's determination. Is that your argument? I'm sorry. Yes, Your Honor, and I apologize for misunderstanding your question. I thought, I think that might have been the. Either way, that is my response. That's what I assumed would be your response. So does, will, whichever way Sanders comes out, does that affect your. Well, it affects the alternative argument in this case about the burden of proof and whether or not the Veterans Court did or did not properly assign the burden of proof once the error was established and the court below recognized that they were bound by that favorable finding to the veteran that an error had been established. In my view, they didn't follow the rule established in Sanders and Simmons. Oh, Sanders was decided afterwards, right? Yeah, that's correct. So they couldn't follow the rule in Sanders. Right, and therefore it needs to go back, but unfortunately there's an appeal to the Supreme Court that's going to tell us. So we'll determine exactly what this case will end up being. On the alternative issue, that's correct, not as to the primary, or excuse me, to the issue that we just argued relative to the jurisdiction of the board to consider prejudicial error versus. Thank you, Mr. Carpenter. You've willingly rebuttaled time, but we'll restore one minute for you. I thought I was just at the end of my 10 minutes, but. Was it 10 minutes? All right. I thought it started at 15. Okay. You've worked through 15 minutes according to my clock. Oh, well, then I'm sorry. I misread. I thought it said 10 when it started. Excuse me. Mr. Hockey. Thank you for allowing the argument to work around the schedule of WMATA. I do believe that the clock started at 10. Did it start at 10? I'm sorry. I thought it was 15. We'll give you your full rebuttal time then, Mr. Carpenter, if you need it. First of all, we don't think that. So, Mr. Hockey, help me see my way out of this tunnel. You knew it was coming, right? You knew it was coming. So, anyway, my question is going to be, what about the board's jurisdiction to consider in the first instance prejudicial error? Is Mr. Carpenter correct that only the Veterans Court can do that, so the only time it would ever come up to the Veterans Court would be when the board said, no, we didn't err, and the Veterans Court said, actually, you did, and then they would consider it. I mean, that seems like a logical position. What do you think about that? Well, I mean, it seems to me that the question ultimately reduced is, is the board required to automatically remand every decision upon a finding of error? And I think the answer is no. Unless the error is not harmless. Well, if you – but as soon as you allow for the fact that the board has the authority to not remand upon a finding of error, if it doesn't believe that it has to, then you're right there in the harmless error realm. And under the regulation that binds the board, 38 CFR 19.9, specifically provides that, as counsel indicated, if further evidence, clarification of the evidence, correction of a procedural defect, which would be the case here, or any other action is essential for a proper appellate decision, a veterans law judge or panel shall remand the case to the agency of original jurisdiction specifying the action to be undertaken. And we submit that that very language, which places the requirement on the board to remand when it is essential for a proper appellate decision, allows the board to make that determination. And if it determines, like in this case, that a remand wasn't essential because – and this I want to correct, I think, some statements of the record that I understand – because notice was provided in this case, and counsel responded to that notice by indicating, I have nothing else to submit. Please certify it and send it to the board. And as the board and veterans court both noted in their respective analyses, what would be the purpose of a remand in that situation when there's absolutely no evidence to be added to the record? You're sending it back, you know, as part of this sort of ping-pong process. Wait, you're saying notice was provided? Are you suggesting there was no error then? No. I'm confused. There was an error of timing. The notice was provided. There were two notices provided in this case. And it related to the way the claims were developed. Initially, there was a claim for post-traumatic stress disorder, and a notice was provided in the normal course prior to the initial adjudication, as is required by statute in various decisions of this court. And then in the challenge to that decision, following the notice of disagreement to the PTSD decision, the claimant raised an issue of a depression claim. And there was further development of the record, and the subsequent statement of the case issued denying that depression claim. But there was no VCA notice provided between the date of the notice of disagreement, i.e., the date that the depression claim was identified, and the date of the statement of the case, i.e., the date that the issue was adjudicated. But counsel made this point apparent to the VA, and so then subsequent to the statement of the case but prior to the case being transmitted to the board, the regional office issued the proper VCA notice for the depression claim, and I would cite to the Joint Appendix at 101. And that's when the answer came back, the counsel and the veterans, saying we have no further material to add to the record, so we submit it on the record as established. Absolutely. So there's no question in this case about a failure to notify on the claim. The depression claim received the same notice that the post-traumatic stress disorder received. The only difference is that it was untimely. That's why we have this argument in our brief about you can look at this case two different ways. You can look at it simply on the basis of what the Veterans Court did, which was to determine that in this case the timeliness issue was harmless, setting aside this question for a moment of what the board did. I'll get to that. But the Veterans Court in this case simply said the only error in this case was one of timing, but the regional office, before sending the package to the board, provided the opportunity, as you indicated, Your Honor, to the claimant and counsel to respond to the notice, in which the claimant and counsel did respond, as indicated in the record, saying we have nothing else to submit. But that response followed the regional office's direction as to what the evidence can be or cannot be. And I'm a bit puzzled about what may be the effect of that, where the record contained Dr. Cecil's opinion that the depressive condition was as likely as not caused by the military service, and the veteran then testified as to what his military experience had been for the purpose of establishing that causation. So I'm not sure what to make of having nothing more to submit in light of the, on a 50-50 case, the veteran would get benefits. And that's standard of proof. So can you help me understand that? Well, I mean, I think we're getting away from the question a little bit of was he provided an opportunity to respond, which I think the record establishes that he was, and getting into what did the evidence show, which... I agree, but I'm linking it by the peculiar response given in January of 2004 by the regional office about what he could submit and what he couldn't submit. Well, and all the regional office was suggesting, which is consistent with this Court's decisions on lay versus medical evidence, there can be situations in a medical nexus situation. I'll step back here. The three general prongs for service connection are that you have an in-service event or injury or disease, you have a present disability, and then you have this nexus that connects the two. And often that nexus is dependent upon some sort of medical connection, not always. And as this Court has said in Jan Rowe and some other cases, that very thing. So the question, I think, what's happening here with the regional office is simply suggesting that, well, to the extent you have additional evidence, if it's additional lay evidence, that may or may not answer the bell as far as the nexus question, because although a lay statement may be able, in the obvious situation, to say, yes, my arm's broken or something like that. And so that could suffice to be relevant evidence for the nexus determination. On the other hand, if it's a more difficult injury or disease that's just generally incapable of being self-diagnosed by a lay person, then you'll need medical evidence, and mental health injuries or cancers and things like that would be examples. So that's what the regional office was simply saying in response to, can I provide a lay testimony? Well, you can, but we don't even know what you're talking about and we can't tell you exactly how we're going to weigh that. So just let us know what you want to do. And that's sort of two opportunities now that he's received. Not only has he received the notice, but then he has to follow-up question about the nature of the evidence and the VA has sort of said here is how we are trying to answer your question, your sort of nonspecific question. Let us know what you want to do. So as far as the notice and the opportunity, the record fairly demonstrates that it was provided here, the opportunity was provided. The question about how the evidence was ultimately weighed is really one for the board or the regional office. Veterans Court has some ability to review that, but this court does not. So our position generally on the harmless error is that there was a harmless error determination made by the board or by the Veterans Court in this case and consistent with this court's precedent in Newhouse and Malinche. Those factual type analyses are beyond the court's jurisdiction to review. Because this case factually is very similar to the way Mayfield 2 and 4 came out, this court's decisions in those cases, and I referred to them as 2 and 4, we added this second argument about you could almost find that just by looking at the notice statute like this court did in Mayfield 4, notice was sufficient in that the opportunity to respond was provided to counsel and he chose that the record should be forwarded. In fact, one could even find that that constituted a waiver of any further review by the regional office when counsel affirmatively submits that I want the record sent to the board. And that's consistent with what this court's held in prior cases with respect to this new evidence. Here we don't even have a question, like in DAV, about there being new evidence out there. We have a situation in which the counsel made it plain that there was no additional evidence, and so the question left for the board and for the Veterans Court was simply do we remand it for the procedural step of simply issuing the copycat regional office decision or do we follow counsel's lead and send it to the board for review? And that's what happened. The case was reviewed on its merits and then after the decision by the board affirming the regional office's denial, do we have what I would consider to be a late-raised challenge to the initial notice. When counsel was presented with the opportunity to add additional evidence to the record, while the case was still at the regional office, he should have taken advantage of it. And when he said he didn't have any additional evidence submitted to the board, that should be the end of it. Questions about whether there is an issue in this case for this court with respect to what the board did, we submit for those very reasons and the one you mentioned earlier, Judge Moore, in this case the Veterans Court made its own prejudicial error analysis. It offered no deference at all to what the board did. So frankly, we don't think there's really any issue before this court with respect to that. Could there ever be? Perhaps in a certain situation, but it's not this case. How would Sanders impact this case? We don't believe Sanders impacts this case. When you read Sanders together with this court's other decisions with respect to what the Veterans Court is supposed to do when performing its prejudicial error analysis, to include reviewing the entire record. In this case, we don't see a burden being imposed. It wasn't imposed on either party clearly in the decision. It doesn't say anything about a burden being imposed. What it does say, though, is that the record plainly showed that Mr. Medrano was provided the opportunity to provide additional evidence to the notice and made a conscious decision through counsel to not provide any additional evidence and specifically requested that the case be transmitted to the board. So we think that this is one of those situations where the evidence overwhelmingly went in one direction with respect to any harm, that questions of burden aren't really pertinent. So we don't believe that we need to wait for Sanders or anything like this. No matter which way the Supreme Court decides. In this court's decision in Sanders, it said basically that where the notice was, where the individual knew, had been placed on notice and was aware of the requirements or the opportunity to provide the information, then there could be no harm. It was a question of who could, in a different case where it was unclear from the record, who has the burden becomes more important. In this case, it's clear from the record. In fact, it's a timing question. So there's no dispute at all, and there never has been a dispute that the notice was received. The question simply is... But in Sanders, wasn't it really the fact that there was error in the V.A.C.C. would turn out to be presumed to be prejudicial? And if the record was silent with respect to that, then obviously because the Secretary bears the burden under Sanders, there would have to be a presumption of prejudice in the case we go back. Here we don't have a silent record. We have a very loud record saying counsel was provided the opportunity to supplement the record and specifically waive that opportunity and request that the record be transmitted to the board. So under any view of the evidence, you don't have a situation where burden is really relevant, sort of heavily favoring one direction in this case. Thank you, Mr. Murphy. Any more questions? Thank you. Mr. Carpenter, at my error, you have five full minutes. I hope not to take it all, Your Honor. If I could begin with the Sanders question. It seems to me, with all due respect to the government, that they sort of treat lightly their burden and ignore the fact that the opinion below begins with the notion that the favorable finding of error cannot be disturbed. So they found the notice error. So then under the standard in Sanders as articulated, which was not articulated at the time in which the Medrano decision came down, the burden then must shift to the government to show prejudice. Now, they slough it off and say, oh, well, there's no problem in not showing prejudice in this case because he said we didn't want to submit any more evidence. But as Your Honor has correctly pointed out, there was already evidence of a current diagnosis, of a medical nexus relating that diagnosis to what happened in service. So all three prongs were met. There wasn't anything more to submit. And that, to me, is the real problem with the way in which the VA chooses to backdoor their overcoming the fact that they didn't give notice in the first instance because they say there's no need to give notice. Well, there probably wasn't any need to give notice because this claim should have been granted. There was no reason for this claim on the depression claim not to be granted. There's a higher standard for PTSD because he has to show creditable supporting evidence of the event. But under Buchanan and Jandro, his lay evidence is sufficient to support that medical opinion, which was of record that it was at least as likely as not that his depression was related to the events that he described to the doctor as having occurred during service. But that may be, but then he says, just transmit it to the board. He's not even making an effort to have the VA consider all this evidence. The VA has done that at that point, Your Honor, and the next step, he is in an appeal, and the next step is for that appeal to have one review by the board. And the primary question in this case is, once they found that error, that should have been the end of the case. But even if it wasn't the end of the case, then once it got to the court, the court should not have been conducting a de novo review. They should have started from the premise that there was an error. And then under Sanders and Simmons, which they did not have available to them, on remand they should have been required to have shifted the burden. And we're going to have to wait for the Supreme Court to tell us whether or not that shifting of burdens or attribution of burdens is affirmed. But unless there's any further questions, I don't believe I have anything further. Thank you, Mr. Kaufman. Thank you very much.